UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                    CASE NO.: 8:19-cr-425-T-35AEP

MARCUS LLOYD ANDERSON

---

## DEFENDANT, MARCUS LLOYD ANDERSON'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Defendant, MARCUS LLOYD ANDERSON, by and through undersigned counsel, hereby files this sentencing memorandum and respectfully moves for a downward variance from the sentence recommended by the United States Sentencing Guidelines, and states as follows:

## I.    INTRODUCTION

The Defendant, MARCUS LLOYD ANDERSON, will be before the Court for sentencing on June 22, 2021 at 9:30 a.m. The PSIR as calculated yields a guideline score of 25 which advises imprisonment range from 57 months to 71 months. The Defendant further seeks a departure based on his personal circumstances, the facts of the case, and the procedural history of the case. The following is a brief summary of the Defendant's position before the Court:

## II.    PERSONAL BACKGROUND AND RELEVANT HISTORY

Mr. Anderson cooperated with authorities and the United States as soon as he fully understood the circumstances he put himself into. Additionally, Mr.

Anderson agreed to cooperate with the authorities for any further investigation. Mr. Anderson pled guilty to a one-count information on April 30, 2020 and United States District Judge Mary S. Scriven accepted the guilty plea and adjudicated Mr. Anderson guilty on May 26, 2020.

Mr. Anderson is in the midst of a 10-year relationship with Brandy Jenkins. The relationship is healthy, safe, and described as "great" by Mr. Anderson. Ms. Jenkins has helped support Mr. Anderson during the pendency of this case. Together, Mr. Anderson and Ms. Jenkins have one healthy, six-year-old daughter, Milan Anderson. Mr. Anderson is Milan's primary caregiver while Ms. Jenkins works full time.

Growing up, Mr. Anderson was fortunate to have a happy childhood in a middle-class family. His father worked a lot, but Mr. Anderson and his father still share a close relationship to this day. Mr. Anderson looks up to his father and describes him as his mentor.

Mr. Anderson has a brother who suffers from unknown mental health concerns and is currently being evaluated based on his behavioral problems. This brother is unable to work or care for himself. Additionally, Mr. Anderson has reported that several extended family members on both sides of his family suffer from various mental health issues. Mr. Anderson himself has experienced bouts of periodic depression in 2018 and 2019, however, he currently has no mental health concerns.

Mr. Anderson admittedly went through a period of his life when he drank alcohol excessively. This condition was exacerbated because he worked in the night club industry and was consistently surrounded by other people drinking alcohol in a drinking environment. Mr. Anderson has not used marijuana since 2019 when he was depressed. Mr. Anderson recognized that his abuse of alcohol and marijuana negatively impacted his life in several ways and enjoys his renewed focus on various aspects of his life without the influence of drugs and excessive alcohol. Further, Mr. Anderson voluntarily submitted a urine specimen prior to his initial appearance in this case which yielded a negative result for any illicit substances.

With regard to this current charge, Mr. Anderson established, owned, and operated Tampa Bay Behavior Health Centers (TBBHC) in 2011 and it is unclear whether Mr. Anderson drew any salary during the years he operated TBBHC and its affiliated assisted living facilities. At some point during TBBHC's operation in 2014, Dr. M.A. began working at TBBHC. Dr. M.A. met with patients at TBBHC and did in fact put some patients on lengthy medical plans that sometimes spanned six months of treatment before another check-up. One patient who met with Dr. M.A. was patient D.B. Specific to the only count, Count One, which Mr. Anderson has pled guilty to, Mr. Anderson used Dr. M.A.'s provider identification to secure medical services on behalf of patient D.B. on or about April 13, 2016 which is approximately one year after Dr. M.A.

left TBBHC. Mr. Anderson billed Medicaid as part of Dr. M.A.'s extended treatment plan for patient D.B. which, while still fraudulent, does have at least a shred of legitimacy as part of patient D.B.'s treatment.

This shred of legitimacy is not intended to justify Mr. Anderson's actions —he takes full responsibility for his mistake— rather, the semblance of legitimacy is intended to show this Court that Mr. Anderson did not intend to harm any patient throughout this process, which this Court should take into consideration when determining a sentence for Mr. Anderson.

## III. SENTENCING GUIDELINES

The Presentence Investigation Report (PSIR), applying the 2018 Guidelines manual, calculated a Total Offense Level of 25 resulting in an advisory range of 57-71 months incarceration. Mr. Anderson's criminal history category is I and his criminal history score is zero. The PSIR does provide a two-level reduction under USSG §3E1.1(a) and a one-level reduction under USSG §3e1.1(b).

## IV. MOTION FOR DOWNWARD VARIANCE FORM THE SENTENCING GUIDELINES

Due to the nature and circumstances surrounding the incident, and the personal history and circumstances of Mr. Anderson, Defendant requests this Honorable Court to impose a sentence below her advisory guideline range.

The Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), gave judges the power to use sentencing range produced by the Guidelines as a "starting point" or an "initial benchmark." See, *Gall v. United States*, 552 U.S. 38, 49 (2007).

In *United States v. Talley*, 431 F.3d 784 (11th Cir. 2005), the Eleventh Circuit adopted a two-step procedure that district courts should follow when determining a sentence in the post-Booker, advisory Sentencing Guidelines era. The district court must first consult the Guidelines and correctly calculate the range provided by the guidelines. *Id.* at 786. Second, the district court must consider the following ten factors: 1) the nature and circumstances of the offense and the history and the characteristics of the defendant; 2) the need to reflect the seriousness of the offense; 3) the need for deterrence; 4) the need to protect the public; 5) the need to provide the defendant with needed educational and vocational training or medical care; 6) the kinds of sentences available; 7) the Sentencing Guidelines range; 8) pertinent policy statements of the Sentencing Commission; 9) the need to avoid unwarranted sentencing disparities; and 10) the need to provide restitution to victims. *Id.* See also, 18 U.S.C. § 3553(a). "The weight to be accorded any given §3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Williams,* 456 F.3d 1353, 1363 (11th Cir. 2006). Additionally, this Court may

attach more weight to some factors than others. *Id.* Applying these ten factors, this Court should consider the following:

The nature of this circumstance involves what started as a legitimate business intended to help people. Mr. Anderson admittedly "got in over his head" and initiated the fraudulent conduct out of financial hardship. (PSIR ¶ 38). Mr. Anderson has repeatedly expressed remorse for his actions and that his conduct in this incident is out of character. While Mr. Anderson understands there is no excuse for what he did, he is hopeful that this Court will consider that this entire venture originated from Mr. Anderson's desire to help people and grant a downward variance below the guideline calculation. Additionally, Mr. Anderson has pled guilty to only the first count he was charged. Specifically, that charge concerns healthcare fraud by Mr. Anderson using the purported provider, Dr. M.A.'s provider information to administer medical services to the purported recipient, D.B. The medical services fraudulently billed to Medicaid on behalf of D.B. from January 2018 through March 2018 totaled $9,072 in payments. (PSIR ¶ 28). The count Mr. Anderson has pled guilty occurred on or about April 13, 2016 for the same purported recipient—two years before the specific example used by the United States in paragraph 28 of the PSIR. Absent specific amounts of fraudulent Medicaid payments, it can be inferred that similar medical services for a patient would be billed two years prior. The loss associated with the specific count to which

Mr. Anderson has pled guilty is almost certainly less than the total calculated loss of all thirteen original counts—twelve of which will be dropped with Mr. Anderson's guilty plea to the first count. The loss associated with the charge Mr. Anderson has pled guilty is much closer to an estimated $10,000 instead of the total $1,274,536.25 which includes all thirteen original charges. In determining a sentence for Mr. Anderson, this Court should consider the actual loss associated with the only count that Mr. Anderson has pled guilty. The purpose of bringing up this alternative dollar amount when considering the actual loss is twofold. First, a failure to object to an allegation of fact in a Presentence Investigation Report admits those facts for sentencing purposes. *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). Second, it is important for this Court to at least consider the actual loss associated with Mr. Anderson's guilty plea. The disparity between an estimated figure close to $10,000 and $1,274,536.25 is substantial and worthy of this Court's consideration.

This case lists twelve victims including two government entities, three providers, and seven assisted living facility residents. (PSIR ¶ 43). The Sentencing Guidelines recommend a two-level increase based on the crime involving ten or more victims. The twelve victims listed is on the low end of this sentence enhancement and this Court should take the relatively low

number of victims into consideration when determining a sentence for Mr. Anderson.

Mr. Anderson submits that a sentence below the guideline score is appropriate and reasonable and would afford adequate specific deterrence. The incident here was nonviolent, Mr. Anderson lacks serious criminal history, and he took responsibility for his conduct here. A sentence below the advisory guideline score in this case would accomplish the goals of Section 3553(a) and still reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

## V.    CONCLUSION

Based on the circumstances set forth above, a sentence below the advisory guideline range should be considered in this case. It is respectfully suggested that this Court should exercise its discretion and impose a sentence less than 57 months of imprisonment.

DATED this 8th of June 2021

/s/ Jay A. Hebert

JAY A. HEBERT, ESQUIRE
FBN:  0880922
HEBERT LAW GROUP, P.A.
5250 Ulmerton Road
Clearwater, FL 33760
TEL:  727-573-2622 / FAX: 727-573-2786
Attorney for Defendant