UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                            CASE NO.: 8:19-cr-425-T-35AEP

MARCUS LLOYD ANDERSON

---

## DEFENDANT, MARCUS LLOYD ANDERSON'S SUPPLEMENTAL MEMORANDUM REGARDING LOSSES

Defendant, MARCUS LLOYD ANDERSON, by and through undersigned counsel, hereby files this supplemental memorandum regarding losses under USSG §2B1.1(b), stating in support as follows:

MARCUS ANDERSON established Tampa Bay Behavioral Health Centers ("TBBHC") in 2011. Doc. 38 (Plea Agreement) at 18. He enrolled TBBHC into the Florida Medicaid program ("Medicaid") so that patients under the care of TBBHC could receive adequate attention from healthcare providers employed by TBBHC. Mr. Anderson admitted he "got in over his head" and has expressed remorse for his mistakes both during in-office conversations and on the record during his own testimony on June 22, 2021.

Mr. Anderson has already entered his guilty plea, which was accepted on May 26, 2020. Doc. 48 at 1-2. In the Plea Agreement, Mr. Anderson admitted to submitting false claims to Medicaid in relation to certain beneficiaries including but not limited to a list of seven incidents. Doc. 38 at 20-21. Among

those incidents were services provided by Dr. M.A., Dr. H.C., and LMHC J.K. Enumerated false claims made by TBBHC include service not provided to M.L., who was hospitalized and not in the care of TBBHC; R.A., who was in jail and not receiving services from TBBHC; D.B., who had not received any services from TBBHC over the span of a few months; and S.J., who was also hospitalized during a span of time when he did not receive treatment from TBBHC.

Clearly, these losses are a direct result of false claims made by TBBHC. However, the same cannot be said for each and every claim sent in by providers Dr. M.A and Dr. H.C.

Dr. M.A. explained to this Court on June 22, 2021 that, often, he would provide treatment plans to patients that extended to six months and sometimes a year. Dr. M.A. would create a treatment plan, the patient would receive that treatment based on the plan created by Dr. M.A, and then at the conclusion of the plan, Dr. M.A. would create a new treatment plan. Part of the Government's contention regarding the loss amount in question here deals with whether the claims submitted by TBBHC for the treatment plans occurred while Dr. M.A. and Dr. H.C. were employed by TBBHC.

The record reflects that patients at TBBHC were still receiving treatment as prescribed by each doctor's treatment plan while neither Dr. M.A. nor Dr. H.C. were employed by TBBHC. Mr. Anderson does not dispute this

practice. However, the treatment each patient was receiving, with a few exceptions, was part of each of the patient's prescribed treatment plan that continued long after Dr. M.A. and Dr. H.C. terminated employment with TBBHC. In other words, the treatment administered to the patients at TBBHC was legitimate and in compliance with plans created by both Dr. M.A. and Dr. H.C. even though neither doctor was employed by TBBHC at the time.

Granted, there are a few exceptions to this general practice. Namely for patients like D.B., R.A., M.L., and S.J. These are patients who could not have received treatment for reasons explained above. Mr. Anderson has admitted guilt to these specific instances. The Government calculates these losses as follows:

| Beneficiary | Date Range | Total Amount |
|---|---|---|
| D.B. | Jan. 1, 2018–March 31, 2018 | $9,072 |
| R.A. | February 19-29, 2016 | $1,584 |
| M.L. | Jan. 1, 2018–March 31, 2018 | $7,873 |
| S.J. | Jan. 1, 2018–March 31, 2018 | $9,169 |
| | TOTAL | $27,698 |

While Mr. Anderson believes the accurate loss amount to be closer to the total amount listed in the chart above, the Government does present an alternative loss amount following the outer limit of a six-month-long treatment

plan by Dr. M.A. Doc. 88 at 16. This amount, which includes legitimate claims for treatment under Dr. M.A.'s plan for six months totals $323,248. While this amount also more accurately reflects the actual loss amount, it is still incomplete. As Dr. M.A. testified on June 22, 2021, some treatment plans could span up to a year, which would make more of the claims submitted by TBBHC legitimate and cut the loss amount even more.

Further, this standard practice of creating treatment plans should not only be applied to Dr. M.A.'s plans, but should also be applied to Dr. H.C.'s treatment plans, further reducing the actual loss amount.

WHEREFORE, the Defendant, Mr. Anderson respectfully asks this honorable Court to take these aforementioned points under advisement while considering the United States' Sentencing Memorandum as she determines the §3553 factors and the loss amount in fashioning a sentence in this case.

DATED this 13th of September 2021

/s/ Jay A. Hebert

JAY A. HEBERT, ESQUIRE
FBN: 0880922
HEBERT LAW GROUP, P.A.
5250 Ulmerton Road
Clearwater, FL 33760
TEL: 727-573-2622 / FAX: 727-573-2786
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record:

Kristen A. Fiore, Esquire

/s/ Jay A. Hebert

JAY A. HEBERT, ESQUIRE
FBN: 0880922
HEBERT LAW GROUP, P.A.
5250 Ulmerton Road
Clearwater, FL 33760
TEL: 727-573-2622 / FAX: 727-573-2786
Attorney for Defendant